# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| CHRISTINE BROWN, | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | CIVIL NO. 06-60-P-H |
| | ) | |
| EASTERN MAINE MEDICAL | ) | |
| CENTER, | ) | |
| | ) | |
| DEFENDANT | ) | |

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

When an employee is chronically late for work (usually by only a few minutes) and her employer fires her as a result, does the federal Family and Medical Leave Act protect these late arrivals as "intermittent leave" if a doctor concludes later that a medical condition was responsible for the chronic tardiness?  I conclude that it does not.  I therefore **GRANT** summary judgment to the defendant employer.

### FACTUAL BACKGROUND

The significant facts are undisputed.[1]

Eastern Maine Medical Center ("EMMC") is a health care facility in Bangor, Maine, that employed the plaintiff Christine Brown as a nurse technician from

---

[1] Citations to the record throughout this section point to both the defendant's and the plaintiff's statements to indicate agreement as to that particular fact; a citation pointing only to the plaintiff's statements reflects the summary judgment mandate to view the facts in the light most favorable to the nonmoving party (in this case, the plaintiff).

June 2002 until it fired her for attendance policy violations on November 3, 2005. Def.'s Statement of Undisputed Material Facts ("Def.'s SMF") ¶¶ 1, 93 (Docket Item 26); Pl.'s Reply to Def.'s Statement of Material Facts ("Pl.'s Reply SMF") ¶¶ 1, 93 (Part I of Docket Item 40); Pl.'s Statement of Material Facts ("Pl.'s SMF") ¶¶ 1–2 (Part II of Docket Item 40).   Throughout her employment, Brown worked three days per week on a shift that began at 6:30 a.m. and ended at 7:00 p.m.   Def.'s SMF ¶¶ 3–4; Pl.'s Reply SMF ¶¶ 3–4; Pl.'s SMF ¶ 13.   Aside from her tardiness and absenteeism, Brown was a very capable nursing technician and performed her job in a satisfactory manner.   Pl.'s SMF ¶ 3.

EMMC informed Brown repeatedly that she must arrive on time and that punching her time card after 6:30 a.m. would be considered a "tardy."   Def.'s SMF ¶¶ 17–18, 25, 41, 56; Pl.'s Reply SMF ¶¶ 17–18, 25, 41, 56.   But Brown was persistently late throughout her employment at EMMC.   Usually Brown was late by only a few minutes—on occasion by up to half an hour—and sometimes she left her house with the belief that she would be on time.   Def.'s SMF ¶¶ 120–21; Pl.'s Reply SMF ¶¶ 120–21.   The record does not reveal any instance when Brown asked permission from EMMC to be late or any occasion when she explained that she needed to be late for work.   She did explain to EMMC her belief that she had lupus and that she was tardy because she was sick and depressed.   Def.'s SMF ¶¶ 61, 92; Pl.'s Reply SMF ¶¶ 61, 92; Pl.'s SMF ¶¶ 35, 54, 65.

Following a report that Brown had 45 late arrivals or absences between August 2003 and January 2004, Zina Black, the nurse manager for Brown's unit, met with Brown.   Black suggested that Brown should use a different alarm clock

or switch to a different shift.  Def.'s SMF ¶¶ 42–44; Pl.'s Reply SMF ¶¶ 42–44; Pl.'s SMF ¶¶ 26–30.  Brown rejected a transfer to a shift that began at 7:00 p.m. because she did not think that the change would help her tardiness.  Def.'s SMF ¶ 45; Pl.'s Reply SMF ¶ 45; Pl.'s SMF ¶ 29.

Dr. Bragg, Brown's physician, took her out of work for two days in January 2005.  Pl.'s SMF ¶ 33.  Dr. Bragg's note stated only that Brown was "under medical supervision and [would] be out of work/school until Wednesday, Jan. 19, 2005."  Pl.'s SMF ¶ 33; Rodgerson Dep., Ex. 6.  On January 27, 2005, Brown received a three-day suspension from Black because she had been late or absent 52 times between January 2004 and January 2005.  Def.'s SMF ¶¶ 52–53; Pl.'s Reply SMF ¶¶ 52–53; Pl.'s SMF ¶ 34.  At the time of this suspension, Brown explained to Black that she was sick, that she believed she might have lupus (based on a prior diagnosis), and that she was looking for a doctor to diagnose her health problems.  Def.'s SMF ¶ 61; Pl.'s Reply SMF ¶ 61; Pl.'s SMF ¶¶ 10, 35–36.

EMMC implemented a stricter attendance policy in March 2005.  Def.'s SMF ¶¶ 62–64; Pl.'s Reply SMF ¶¶ 62–64; Pl.'s SMF ¶¶ 38–41.  On July 31, 2005, Brown informed Black that Dr. Bragg was taking her out of work again for three days because of fatigue.  Def.'s SMF ¶¶ 74–76; Pl.'s Reply SMF ¶¶ 74–76; Pl.'s SMF ¶¶ 43, 45.  Black then informed Brown that she was suspending her for the next three work days for violations of the new attendance policy (Brown served the suspension concurrently with her medical leave).  Def.'s SMF ¶¶ 69–73; Pl.'s Reply ¶¶ 69–73; Pl.'s SMF ¶ 44.

Throughout her employment at EMMC, Brown suffered from depression and fatigue of unknown origin.  Pl.'s SMF ¶ 8.  Brown consulted a number of doctors in search of a diagnosis—"working diagnoses" included fibromyalgia, rheumatoid arthritis, lupus, chronic fatigue syndrome, depression, and a connective tissue disorder—but in the year prior to her termination she was unsuccessful in her attempts to receive a definitive diagnosis.  Pl.'s SMF ¶¶ 9–11.

Fearing that her tardiness might lead to termination, Brown met with Lorraine Rodgerson, Vice President of Patient Care Services and Chief Nursing Officer at EMMC, in August 2005 to explain that her tardiness was because she "was sick."  Def.'s SMF ¶¶ 9, 77–78; Pl.'s Reply SMF ¶¶ 9, 77–78; Pl.'s SMF ¶ 54.  At a later meeting, Brown informed Black and Rodgerson that she had a diagnosis of depression and that she was tardy because she was sick and depressed.  Def.'s SMF ¶ 92; Pl.'s Reply SMF ¶ 92; Pl.'s SMF ¶¶ 65.  Shortly before her termination, Brown also informed Black that she had scheduled an appointment with Dr. Krause, a rheumatologist, for December 22, 2005, with the hope of obtaining a more definitive diagnosis.  Def.'s SMF ¶ 127; Pl.'s Reply ¶ 127; Pl.'s SMF ¶ 62.

Before terminating her, EMMC offered Brown medical leave, but not specifically federal Family and Medical Leave Act ("FMLA" or "Act") leave.  Def.'s SMF ¶¶ 131–134; Pl.'s Reply SMF ¶¶ 131–134.  Brown rejected the offer because she could not afford to take unpaid leave.  Def.'s SMF ¶ 133; Pl.'s Reply SMF ¶ 133.  Brown was generally unaware of FMLA leave.  Pl.'s Reply SMF ¶ 136.  No one at EMMC ever mentioned FMLA leave (including intermittent leave) to Brown.

Def.'s SMF ¶ 132; Pl.'s Reply SMF ¶ 132; Declaration of Christine Brown, ¶ 5 (Docket Item. 42).

EMMC terminated Brown on November 3, 2005, for excessive violation of its attendance policy during August, September and October 2005.  Def.'s SMF ¶¶ 93–94; Pl.'s Reply SMF ¶¶ 93–94.

Brown's attendance problems were never due to a doctor's appointment or the need to follow a medical treatment plan.  Def.'s SMF ¶ 95; Pl.'s Reply SMF ¶ 95.  During her employment at EMMC, no doctor ever told Brown that it was medically necessary for her to be late for work.  Def.'s SMF ¶¶ 97–98; Pl.'s Reply SMF ¶¶ 97–98.  EMMC never asked Brown for a medical certification regarding her health condition.[2]

After Brown's termination, Dr. Krause concluded that Brown suffered from a connective tissue disorder, which made it "impossible for [Brown] to continue the functions of her job, or to arrive at work on time."  Letter from Donald W. Krause, M.D. to Jeffrey Neil Young (Jan. 5, 2006), attached as Ex. 1 to Aff. of Jeffrey Neil Young (Docket Item 41).  Later, Dr. Krause updated his diagnosis:

> [a]fter continuing treatment of Ms. Brown, my current diagnosis is that of a myofascial pain disorder.  The myofascial pain disorder is associated with profound fatigue, weakness and lethargy, to a degree that made it medically impossible for her to arrive at work on time at least for the year prior to her termination by Eastern Maine Medical Center.

Aff. of Donald W. Krause, M.D., ¶ 6 (June 12, 2007) (Docket Item 45).

---

[2] The plaintiff states that EMMC "might have told [her] to bring in a doctor's note to demonstrate she was ill."  Pl.'s SMF ¶ 55.  For summary judgment purposes, however, I view this ambiguity in the light most favorable to the plaintiff.

EMMC provided notice of FMLA rights through a number of different vehicles.  Since 2001, a poster explaining employees' FMLA rights (it did not mention intermittent leave) was posted on the EMMC employee bulletin board. Def.'s SMF ¶ 144; Pl.'s Reply SMF ¶ 144; Howat Decl. ¶ 4, Ex. B (Docket Item 26). EMMC's employee handbook contained an explanation of FMLA rights (it too did not mention intermittent leave).  Def.'s SMF ¶ 145; Pl.'s Reply SMF ¶ 145; Howat Decl. ¶ 3, Ex. A.  EMMC's forms for requesting leave did contain explicit references to FMLA intermittent leave.  Def.'s SMF ¶ 143; Pl.'s Reply ¶ 143.  EMMC's intranet contained an additional explanation of FMLA rights, which specifically informed employees that "[u]nder certain circumstances an employee may take FML in short increments (intermittent leave) . . . ."  Def.'s SMF ¶¶ 138–41; Pl.'s Reply SMF ¶¶ 138–41.  Brown was computer–illiterate, however, and could not access this intranet information.  Pl.'s Reply SMF ¶¶ 140–141.

## ANALYSIS

The Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq., makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act.  29 U.S.C. § 2615(a)(1). Brown claims that EMMC interfered with her FMLA rights in two ways: (1) failing to tell her that she could treat the amount of time she was late as merely consuming, minute by minute,[3] her entitlement to FMLA intermittent leave; and (2) firing her for attendance policy violations when it should have treated her

---

[3] "There is no limit on the size of an increment of leave when an employee takes intermittent leave . . . .  However, an employer may limit leave increments to the shortest period of time that the employer's payroll system uses to account for absences or use of leave, provided it is one hour or *(continued on next page)*

lateness as excused intermittent leave.  EMMC maintains that it gave Brown all the notice the FMLA requires, and that her tardiness did not qualify as intermittent leave.

The central issues, then, are whether the FMLA immunizes Brown's chronic tardiness through its allowance of intermittent leave, if the jury accepts Dr. Krause's retrospective diagnosis that a myofascial disorder made it impossible for Brown to be on time;[4] and whether EMMC was obliged to tell Brown that she could excuse her tardiness in this fashion.  In other words, must an employer tell an employee who is chronically late for work by a few minutes and claims a medical condition, that she may be able to treat the lateness as intermittent leave?

*(1)*     ***Preliminary Evidentiary Issue***

The Magistrate Judge excluded the opinion of Dr. Krause, then recommended summary judgment for EMMC on the basis that there was no admissible evidence that Brown had a medical condition that caused her tardiness.   In its reply memorandum, EMMC did legitimately object to the admissibility of Dr. Krause's opinion, based upon the form in which Brown's lawyer presented the diagnosis in opposing summary judgment.  But Brown's lawyer then promptly cured the deficiency.[5]  I **OVERRULE** the exclusion.  Nothing is

---

less."  29 C.F.R. § 825.203(d).

[4] Because EMMC never requested a medical certification from Brown, it cannot rely on her failure to provide an earlier diagnosis and certification.  See 29 U.S.C. § 2613; 29 C.F.R. § 825.305.

[5] Brown's lawyer initially told EMMC's lawyer in an e-mail exchange that he intended to use Dr. Krause's opinion, as expressed in a January 5, 2006 letter, in support of Brown's opposition to EMMC's motion for summary judgment.  The January 5 letter from Dr. Krause was addressed to Brown's lawyer.  Brown's lawyer asked EMMC's lawyer whether certification of the letter was necessary.  EMMC's lawyer responded that he would not object to the Krause letter "on the basis of lack of authentication (Rule 901) or authenticity (Rule 1003)," but "reserve[d] the right to object to it on other grounds."  Email from Frank T. McGuire to Jeffrey Neil Young, attached as Ex. A to *(continued on next page)*

gained by refusing to consider the doctor's opinion on the merits, and a merits determination should be the goal.

To the extent that EMMC also challenges Dr. Krause's letter for lack of foundation because Dr. Krause did not examine Brown until after EMMC fired her, I conclude that Dr. Krause's retroactive diagnosis is subject not to Rule 602 but Rule 702.  There are currently no <u>Daubert</u>-type challenges to his opinion.  The progression of medical conditions and symptoms over time is an expected component of a physician's knowledge; it is not uncommon for a physician to draw conclusions about a patient's past condition based on current observations.[6]  The underlying credibility and weight to be given these inferences is a matter for the fact-finder.[7]  For the rest of this opinion, therefore, I assume that Brown can prove

---

Second Declaration of Jeffrey Neil Young (June 12, 2007) (Docket Item 46).  Brown then used the letter in opposing EMMC's motion for summary judgment.  In its reply memorandum, EMMC objected to its use on the basis that the letter to the lawyer was not sworn and was not otherwise admissible as a hearsay exception (<u>e.g.</u>, a medical record or business record).  Def.'s Reply Mem. to Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 3 (Docket Item 43); Def.'s Consol. Statement of Undisputed Material Facts ¶ 95 (Docket Item 44).  Brown promptly submitted a sworn version, along with certifications that the doctor considered the letter part of the medical records.  The affidavit also reflected adjustments in the doctor's diagnosis based upon continued treatment in the interim.  EMMC has never claimed that it was misled or surprised.  <u>See</u> Def. EMMC's Response to Pl.'s Objection to Recommended Dec. Granting Summ. J. at 3 (Docket Item 53).

[6] In <u>Hodgens v. General Dynamics Corp.</u>, the employee did not have a definitive, precise diagnosis at the time the employer took action, and the district court awarded summary judgment to the employer on the basis that the employee could not show a "serious health condition."  144 F.3d 151, 161–163 (1st Cir. 1998).  But the First Circuit rejected that reasoning, stating:

> [i]t seems unlikely that Congress intended to punish people who are unlucky enough to develop new diseases, or to suffer serious symptoms for some period of time before the medical profession is able to diagnose the cause of the problem.  Indeed, one reason for taking 'intermittent leave' under the FMLA would be to visit the doctor for purposes of diagnosis and treatment . . .

<u>Id</u>., 144 F.3d at 163 (affirming the grant of summary judgment on different grounds).

[7] The only legal support that EMMC provides for its evidentiary position is <u>Beaulieu v. The Aube Corp.</u>, 796 A.2d 683, 692–93 (Me. 2002), a decision by the Maine Law Court interpreting the Maine Rules of Evidence.  First, of course, the Federal Rules of Evidence govern in this federal proceeding.  Second, <u>Beaulieu</u> involved the exclusion of testimony by a physician who was testifying about whether a man was already intoxicated when a restaurant served him alcohol.  The physician had not personally examined the man at any time and was not relying upon any other professional
*(continued on next page)*

that because of her medical condition, it was impossible for her to arrive to work at EMMC on time.

**(2)      *Federal Family and Medical Leave Act***

The FMLA allows eligible employees to take up to 12 weeks of intermittent leave during any 12-month period if the employee is inflicted with a "serious health condition" that makes her "unable to perform the functions" of her position. 29 U.S.C. § 2612(a)(1). "There is no limit on the size of an increment of [intermittent] leave. . . ." 29 C.F.R. § 825.203(d).[8] An employee may take intermittent leave "for absences where the employee . . . is incapacitated or unable to perform the essential functions of the position because of a chronic serious health condition even if he or she does not receive treatment by a health care provider." See 29 C.F.R. § 825.203(c)(2). But unless the employer agrees otherwise, intermittent leave under this category may be taken only "when medically necessary." 29 U.S.C. § 2612(b)(1). The parties here argue over "medical necessity," whether Brown was "unable to perform the functions" of her job, and whether EMMC gave her sufficient information about FMLA leave. The fundamental issues underlying their arguments are, what is leave and what is it designed to cover?

"Leave" is not a defined term under either the statute or the regulations. The regulations define "intermittent leave" merely as "FMLA leave taken in

---

examination. Id., 796 A.2d at 691–693. Dr. Krause's opinion about Brown's condition during 2005 based upon his personal examination of Brown on December 22, 2005, is hardly similar to a doctor testifying from secondhand data about a person's level of intoxication during a short period on a given night.

[8] But see note 3 supra, concerning how an employer can count the absence.

9

separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.203(a);

Mellen v. Trs. of Boston Univ., 2007 WL 2745015, at *3 (1st Cir. Sep. 21, 2007).

Since Brown was not late due to attending medical treatment, nor using her

lateness for recovery purposes, she can rely only upon 29 C.F.R. § 825.203(c)(2),

permitting intermittent leave "for absences where the employee . . . is

incapacitated or unable to perform the essential functions of the position because

of a chronic serious health condition even if he or she does not receive treatment

by a health care provider." The regulations give as examples of such incapacity

absences: inability to report to work because of "the onset of an asthma attack"

or, in the case of a pregnant employee, "severe morning sickness." Id.,

§ 825.114(e).

But Brown *could* perform the functions of her position and even received

favorable employment reviews for doing so; she simply could not get to work on

time. To be sure, getting to work on time is an important part of a nursing

technician's job function. But to treat chronic lateness, even if caused by a

medical condition, as an incapacity, or inability to perform, that requires

intermittent "leave" for the brief duration of the lateness, distorts the English

language and trivializes the purpose of the Act.[9]

---

[9] Judge Easterbrook was "doubtful that the Act ha[d] much to offer" an employee "incapacitated by depression between 10% and 20% of the time [with] episodes [that] occur[ed] without warning" because "[c]ourts have been reluctant to read the FMLA as allowing unscheduled and unpredictable, but cumulatively substantial, absences . . . ." See Collins v. NTN-Bower Corp., 272 F.3d 1006, 1007 (7th Cir. 2001). Under the Americans with Disabilities Act, the courts have come to the conclusion that "in most instances the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability" because "no business is 'obligated to tolerate erratic, unreliable attendance.'" Equal Employment Opportunity Comm'n v. Yellow Freight Sys., Inc., 253 F.3d 943, 948 (7th Cir. 2001) (quoting Waggoner v. Olin Corp., 169 F.3d 481, 485 (7th Cir. 1999)).

10

The Act was designed to deal with "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). The regulations give the following example for a case of intermittent leave caused by incapacity or inability to perform: "A pregnant employee may take leave intermittently . . . for her own condition, such as for periods of severe morning sickness." 29 C.F.R. § 825.203(c)(1). Two litigated cases deal with diabetic employees taking unscheduled breaks in order to eat to correct low blood sugar levels. Collins v. United States Playing Card Co., 466 F. Supp.2d 954 (S.D. Ohio 2006); Sabbrese v. Lowe's Home Centers, Inc., 320 F. Supp.2d 311 (W.D. Pa. 2004). But Brown did not require leave from work for the duration of an attack of some sort in the morning (such as morning sickness or low blood sugar), ending when it was over or treated; what she needed was immunity for her perennial lateness of a few minutes, caused by a medical condition that made her resist getting out of bed to go to work. Lateness is not leave.

The statute and regulations also require "a medical need for leave" to support intermittent leave entitlement. 29 U.S.C. § 2612(b)(1); 29 C.F.R. § 825.117.[10] Here, Brown has demonstrated through Dr. Krause a medical *cause* for her chronic lateness (impossible for her to be on time) and a desire for FMLA

---

[10] Brown argues that EMMC should be estopped from claiming that she has an obligation to show "medical necessity" because EMMC failed to comply with the FMLA requirement to give "specific, written notice of the requirement" for medical certification. Pl.'s Obj. to Recommended Dec. on Summ J. at 2 (Docket Item 52) (citing 29 C.F.R. §§ 825.301(b)(1), (c), 825.305(a)). I disagree. Notice of the employer's demand for certification is different from Brown's burden, as the employee plaintiff in this lawsuit, to show that she was entitled to FMLA leave, which in her case rests *(continued on next page)*

immunity, but I conclude that she has not shown a medical *need* to take leave in those increments.  Yes, the regulation allows intermittent leave for "absences" in case of incapacity or inability to perform even if the employee does not receive treatment.  29 C.F.R. § 825.203(c)(2).  But that allowance appears in a regulation subsection that allows intermittent leave exclusively for treatment and recovery. Id. § 825.203(c).  Brown's condition involved neither.  (Remember that EMMC offered her regular leave for recovery purposes, which she declined.)  The discovery of a sympathetic physician later willing to attribute the entire host of momentary late arrivals to a medical condition is not enough to turn "lateness" into "leave."[11]

Since I conclude that Brown was not entitled to the intermittent leave she now seeks, the issue of what notice EMMC was obliged to give her is moot.  I observe the following, however, in the event of an appeal.  EMMC offered Brown both a change of schedule to come in at a later time of the day and a period of leave so that she could recover from whatever ailed her.  As was her right, Brown rejected both offers.  Brown argues that because EMMC knew that she was sick, EMMC had an additional obligation to suggest to Brown that she use intermittent leave to excuse her tardiness.  Nothing in the FMLA imposes such an obligation upon an employer.

---

exclusively on an entitlement to "intermittent leave."  See Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 331 (1st Cir. 2005).

[11] Classifying chronic tardiness, such as Brown's, as intermittent leave would preclude useful invocation of the features in the FMLA regulatory framework that protect against employee abuse of FMLA leave and minimize disruptions to the employer.  For example, the employee's obligation to provide notice of foreseeable and unforeseeable leave so as to allow her employer to find replacements would be ineffectual.  See 29 U.S.C. § 2612(e); 29 C.F.R. § 825.302.  In addition, with random tardiness the requirement that "[e]mployees needing intermittent FMLA leave . . . must attempt to schedule their leave so as not to disrupt the employer's operations" is rendered meaningless.  See id., § 825.117.

The only notice that the Act requires an employer to provide is a poster "setting forth excerpts from, or summaries of, the pertinent provisions . . . ." See 29 U.S.C. § 2619(a).  There is no dispute that EMMC had a poster at all relevant times that satisfied the statutory requirements.

The regulations create additional obligations on the employer to provide both general notice and individualized notice in certain circumstances.  See 29 C.F.R. § 825.301; Ragsdale v. Wolverine Worldwide, 535 U.S. 81, 97–99 (2002) (O'Connor, J., dissenting); Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 161 (2d Cir. 1999) ("we note that the [FMLA] itself provides only for the posting of summary notices . . . and that the additional notice provisions set out in the regulations are highly ambiguous").  Brown has not argued that EMMC violated the FMLA's general notice requirements.  Brown's argument, rather, is that her actions triggered EMMC's obligation to provide individualized notice; and that this obligation included, in these circumstances, a duty to explain intermittent leave and how it could be used to protect her tardiness.

An employer must provide individualized notice of FMLA rights when an employee requests or takes leave, and the employer has sufficient information to believe that the FMLA may apply.  29 C.F.R. § 825.301(c) ("employee gives notice of the need for FMLA leave"); id., § 825.208(a)(2) ("the employee would need to state a qualifying reason for the needed leave"); id., § 825.208(b)(1) ("employer has acquired knowledge that the leave is being taken for an FMLA required reason");

<u>Collins v. NTN-Bower Corp.</u>, 272 F.3d 1006, 1009 (7th Cir. 2001).[12]   But here, Brown never told EMMC that she was seeking leave for the short durations of her late arrivals.   EMMC therefore could not have known that leave was being taken, nor could it be expected to treat the common occurrence of late arrivals as leave. As a result the individualized notice of section 825.301(b) was never required.[13] And even if EMMC had an obligation to provide Brown with individualized notice, nowhere do the regulations require individualized notice of the specific FMLA right to intermittent leave.[14]

---

[12] In some cases, an employer can be expected to provide an employee with individualized notice even without a specific request for leave, such as when an employee does not expressly request leave but "circumstances provide the employer with sufficient notice of the need for medical leave" or "the employee is incapable of providing such notice."   <u>See</u> <u>e.g.</u>, <u>Burnett v. LFW Inc.</u>, 472 F.3d 471, 479 (7th Cir. 2006); <u>Cavin v. Honda of America Mfg., Inc.</u>, 346 F.3d 713, 724–725 (6th Cir. 2003).   The type of circumstances that provide an employer with sufficient constructive notice are those that "present an obvious need for medical leave."   <u>See</u> <u>Burnett</u>, 472 F.3d at 479.   For example, <u>Cavin</u> involved a situation where the need for medical leave was obvious, because the employee telephoned his employer to explain that he had just been a victim in a motorcycle accident.   346 F.3d at 724.   Brown has not put forth facts sufficient to show that her need for FMLA leave was obvious or that she was incapable of providing notice of her need for leave.

[13] Brown's argument that she was entitled to individualized notice of FMLA intermittent leave relies principally on a Supreme Court hypothetical suggesting an employer obligation to provide individualized notice including an explanation of intermittent leave in certain circumstances:

> [c]onsider, for instance, the right under [29 U.S.C.] § 2612(b)(1) to take intermittent leave when medically necessary.   An employee who undergoes cancer treatments every other week over the course of 12 weeks might want to work during the off weeks, earning a paycheck and saving six weeks for later.   If she is not informed that her absence qualifies as FMLA leave—and if she does not know of her right under the statute to take intermittent leave—she might take all 12 of her FMLA-guaranteed weeks consecutively and have no leave remaining for some future emergency.

<u>Ragsdale</u>, 535 U.S. at 89–90.   Two critical assumptions in this hypothetical are that the employee has requested leave for treatment and also has provided details regarding the timing and reasons for the proposed treatment.   Brown did not provide EMMC with either a request for leave regarding her tardiness or a proposed schedule for her tardiness.

[14] A prototype of the individualized notice required by 29 C.F.R. § 825.301(b) is included as Appendix D to the regulations, and it does not include any explanation of intermittent leave.   The Dep't of Labor's FMLA Fact Sheet, which satisfies the individualized notice requirements for employers that do not otherwise distribute an employee handbook, 29 C.F.R. § 825.301(a)(2), does include a discussion of intermittent leave.   <u>See</u> United States Dep't of Labor Website, Fact Sheet #28:   The   Family   and   Medical   Leave   Act   of   1993,   available   at http://www.dol.gov/esa/regs/compliance/whd/whdfs28.htm (last visited Sep. 25, 2007).   But this *(continued on next page)*

Brown argues that she provided enough information to obligate EMMC, under the regulations, to inquire further whether leave being taken or requested qualified as FMLA leave.  <u>See</u> 29 C.F.R. § 825.302(c); <u>Miller v. GB Sales & Service, Inc.</u>, 275 F. Supp.2d 823, 829 (E.D. Mich. 2003).  This regulation works in conjunction with 29 C.F.R. § 825.301(b) to help trigger the individualized notice obligation by requiring an employer to inquire further as to an employee's health condition and reasons for seeking leave, but only when an employee has provided "at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and <u>the anticipated timing and duration of the leave</u>." 29 C.F.R. § 825.302(c) (emphasis added).  EMMC could not be expected to interpret Brown's chronically late arrivals as instances of FMLA intermittent leave that required further inquiry into the reasons, especially in the complete absence of any explanation from Brown that her late arrivals were "medically necessary" as required for FMLA intermittent leave.  Moreover, the regulation's requirement that the employee provide the "anticipated timing and duration of the leave" illustrates the fundamental difficulty, see note 11 <u>supra</u>, explained above, in treating Brown's pattern of tardiness as FMLA intermittent leave.  Here, Brown has failed to provide sufficient facts to show that EMMC's obligation to provide any type of individualized notice under the regulations was triggered.[15]

---

provision does not apply to EMMC because it did have an employee handbook with an explanation of FMLA rights at all relevant times.  <u>See</u> 29 C.F.R. § 825.301(a)(1); Howat Decl. ¶ 3, Ex. A.

[15] This accords with Magistrate Judge Kravchuk's conclusion in the Recommended Decision on Motion to Dismiss in this matter, which I approved without alteration:

> "Brown cannot ultimately rely upon the mere fact that EMMC did not give her notice of the right to take intermittent leave under the FMLA, but . . . it would not be impossible for Brown to present a set

*(continued on next page)*

## CONCLUSION

Christine Brown certainly suffers from a serious health condition.  The FMLA offered her a broad array of employment protections for time needed to diagnose and treat her medical condition.  Brown conceivably also could make a claim under the Americans with Disabilities Act ("ADA"), if a "reasonable accommodation" existed that EMMC could have implemented.  See generally 29 C.F.R. § 825.702 (describing the interaction of the FMLA with other federal and state anti-discrimination laws).  But the FMLA does not provide a blanket excuse for Brown's persistent pattern of tardiness; or require an employer to suggest intermittent leave to an employee who is repeatedly late for work.  EMMC's motion for summary judgment is **GRANTED.**

**SO ORDERED.**

**DATED THIS 15TH DAY OF OCTOBER, 2007**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

of facts that would indeed state a claim under the scenario she has presented in her complaint.  Brown alleges facts from which it might be possible to infer that her employer was on notice of her serious medical situation, her continuing fatigue, and her need to avail herself of FMLA leave, yet specifically failed to give her notice of her right to take intermittent leave to her great detriment."

Id. at 5 (Docket Item 8).  The summary judgment record in this case fails to reveal sufficient facts from which a jury could infer EMMC had an obligation to provide Brown with individualized notice of her right to take intermittent leave.